UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY CARRION

                                          Case No. No.  13-13827

              Plaintiff,                  District Judge Sean F. Cox

v.                                        Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kristy Carrion ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.  the parties have filed cross-motions for summary judgment, which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #10] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #8].

## I.  PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income on June 21, 2011, alleging disability as of May 1, 2006 (Tr. 112-118, 119-126). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on April

-1-

13, 2012 in Tucson Arizona before Administrative Law Judge ("ALJ") Laura Speck Havens (Tr. 37). Plaintiff, unrepresented, testified by video conference, (Tr. 3-9), as did her husband, Michael Carrion (Tr. 47-50). On April 20, 2012, ALJ Havens found Plaintiff not disabled (Tr. 23-30).

On July 10, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-5). Plaintiff filed suit in this Court on September 9, 2013.

## II. BACKGROUND FACTS

Plaintiff, born March 20, 1978, was 34 at the time of the administrative decision (Tr. 30, 112). She completed 11th grade and worked previously as a cashier/stocker, cashier, hair salon assistant, and tile installer (Tr. 136). She alleges disability as a result of degenerative arthritis and fibromyalgia (Tr. 135).

### A. Plaintiff's Testimony

*Plaintiff prefaced her testimony by stating that she wanted to proceed unrepresented* (Tr. 40).

She then offered the following testimony:

Plaintiff was able to read a newspaper and perform simple calculations (Tr. 42). She became unable to work on May 1, 2006 due to "chronic back pain and chronic fatigue" (Tr. 42). She was terminated from her most recent job as a result of the medical conditions (Tr. 42). She lived with her husband and two children, ages 13 and 4 (Tr. 43). She typically arose at 7:00 a.m. (Tr. 43). On some days, she was unable to dress and bathe by herself, at

which time she sought assistance from her husband or older son (Tr. 43). She performed household chores, cooked, and did laundry chores (Tr. 43-44), but did not mop, sweep, grocery shop, or garden (Tr. 44). She did not have current hobbies (Tr. 44). She watched television for six hours each day and "sometimes" exercised by walking or doing yoga (Tr. 44). She was able to walk or perform yoga for up to 20 minutes (Tr. 44). She could stand or sit in one position for up to 20 minutes and lift 10 pounds (Tr. 46). She could drive for up to 30 minutes (Tr. 45).

Plaintiff experienced problems eating due to nausea (Tr. 45). She slept an average of three to four hours a night (Tr. 45). She received treatment from a primary doctor and a rheumatoid arthritis specialist (Tr. 45). She experienced chronic lower back, leg, and hand pain (Tr. 46). On a scale of one to ten, she characterized her pain as a "seven" (Tr. 46). She did not take medication (Tr. 46). She had been prescribed one pain medication but she had discontinued taking it due to the side effect of stomach problems (Tr. 47). She did not experience problems picking up a cup or book or moving her fingers on a keyboard (Tr. 47). She saw a doctor once every week or two (Tr. 46).

### B. Michael Carrion's Testimony

Plaintiff's husband, Michael Carrion, offered the following testimony:

On certain days, Plaintiff was unable to get out of bed due to shaking and hand cramps (Tr. 48). Some days, Plaintiff had dizzy spells (Tr. 49). Her condition had gotten progressively worse in the past few years (Tr. 49). Plaintiff condition required him to take

-3-

on cooking, housework, child care, and shopping responsibilities (Tr. 49-50).

### C. Medical Records

#### 1. Treating Records

May, 2006 treating records note a history of asthma, depression, panic disorder, and three spontaneous abortions (Tr. 197).  July, 2006 treating notes state that Plaintiff's condition was stable after undergoing a procedure to terminate an ectopic pregnancy (Tr. 192-193).  March, 2007 emergency room notes state that Plaintiff sought treatment for pregnancy-related conditions (Tr. 189).  December, 2007 treatment notes state that Plaintiff "appeare[d] well" six week after giving birth to her second son (Tr. 187).  In February, 2009, Plaintiff sought emergency treatment for flank pain (Tr. 184).  Lab testing was essentially unremarkable (Tr. 185).  She was released in stable condition (Tr. 185).

September, 2009 treating records by Shannon Browne, M.D. note Plaintiff's report of foot pain after injuring her foot chasing her son (Tr. 203).  An x-ray of the left foot was unremarkable (Tr. 213). October, 2009 treating records state that Plaintiff was "feeling well" (Tr. 202).  In January, 2010, James E. Dowd, M.D. noted that Plaintiff's clinical presentation was consistent with fibromyalgia (Tr. 218).  Plaintiff described her pain as "moderate" (Tr. 218).  In March, 2010, Dr. Dowd noted Plaintiff's complaints of fatigue, anxiety, and interrupted sleep (Tr. 199).  An x-ray of the right hand was unremarkable (Tr. 212).  Plaintiff reported taking supplemental vitamins (Tr. 199).  Dr. Dowd noted an established diagnosis of fibromyalgia (Tr. 200).  The following month, Dr. Browne's notes state that Plaintiff felt

"better" since beginning Cymbalta (Tr. 228). October, 2010 x-rays of the lumbosacral spine were unremarkable (Tr. 211). An April, 2011 MRI of the lumbar spine showed mild disc bulging at L3-4 and L4-5 and mild facet arthropathy at L5-S1 but no other significant abnormalities (Tr. 209). In May, 2011, rehabilitation specialist Jon M. Wardner, M.D. examined Plaintiff, noting her complaints of level "seven" pain on a scale of one to ten (Tr. 214). Plaintiff stated that she was "not interested" in a referral to a pain clinic or undergoing injection therapy (Tr. 215, 223). Dr. Wardener, noting "a possible component of somatization," recommended aquatic therapy and an examination by a rheumatologist (Tr. 215). He noted an antalgic gait (Tr. 224). Dr. Wardener also recommended "aerobic conditioning" (Tr. 225).

### 2. Non-Examining Evidence

In August, 2011, Jack G. Belen, M.D. performed a consultative examination on behalf of the SSA, finding that Plaintiff was unable to sit, bend, stoop, carry, push, or pull (Tr. 235). He found a full range of motion in all joints except somewhat reduced motion in the lumbar spine and left ankle (Tr. 235, 237-238). He found that Plaintiff was unable to heel and toe walk and ambulated with a "lurching gait" (Tr. 236). He concluded the evidence did not support the need for a walking aid (Tr. 236). Dr. Belen noted Plaintiff's claim that she was unable to sit and sleep disturbances as a result of body pain (Tr. 239). She reported that she currently took Cymbalta, Vicodin, Tramadol, and Flexeril (Tr. 239). Plaintiff reported that she shattered her right ankle in a 2001 motor vehicle accident (Tr. 240). Dr.

Belen observed that Plaintiff could get on and off the examination table without difficulty (Tr. 240).

### 3.  Evidence Submitted After the April 20, 2012 Administrative Decision[1]

A November, 2011 esphagogastroduondenoscopy was unremarkable (Tr. 273).   A colonoscopy performed the same month was negative for Crohn's disease (Tr. 259, 271). In December, 2011, Robert L. Stoler, M.D. noted Plaintiff's reports of abdominal pain and "recent diarrhea" (Tr. 256).  December, 2011 imagining studies of the small intestine showed several small ulcerations but was otherwise normal (Tr. 275).  On December 23, 2011, Dr. Stoler recommended followup testing for Celiac's disease (Tr. 248).

---

[1]

Where the Appeals Council denies a claimant's request for a review of an application based on new material (Tr. 1–5), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696–696 (6th Cir.1993). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

The new material does not provide grounds for remand.  First, Plaintiff does not cite any of the newer evidence in arguing for remand and has not provided good cause for the late submission of this evidence.   Moreover, these records do not provide a basis for reconsideration of the ALJ's decision, even assuming that Plaintiff had provided good cause for the tardy submission.  The records pertain exclusively to Plaintiff's treatment for diarrhea and abdominal pain in November and December, 2011 (Tr. 245-281).  They contain no support for Plaintiff's claim of disability as a result of arthritis and fibromyalgia.

### D.  The ALJ's Decision

Citing the medical records, ALJ Havens found that Plaintiff experienced the severe impairments of "arthritis and fibromyalgia syndrome" but that the conditions did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work, limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling (Tr. 26). The ALJ determined that  Plaintiff was capable of performing her past relevant work as a receptionist and cashier (Tr. 29).

The ALJ discounted Plaintiff allegations of disability.  She noted that Plaintiff's testimony that she received treatment at least twice a month was unsupported by medical records showing only occasional treatment (Tr. 27).  The ALJ cited treating records stating that Plaintiff had been advised to take up an aerobic exercise program (Tr. 28).  She noted that Plaintiff's earlier statement that she continued to prepare meals, perform household chores, do laundry, drive, shop, manage finances, exercise, and take care of her young children stood at odds with her testimony of significant functional limitations (Tr. 27, 151-156).  The ALJ discounted Michael Carrion's testimony on the basis that it "appear[ed to be based in large part on [Plaintiff's] subjective reports of pain" (Tr. 27).  She gave Dr. Belen's consultative findings "minimal weight," noting that his findings were based "in large part" on Plaintiff's subjective complaints (Tr. 28).  The ALJ also found that Dr. Bleen's findings were "vague and offere[d] no identification of what evidence was relied upon in forming the opinion" (Tr.

28).

## III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989)

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

-8-

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### The Residual Functional Capacity Assessment

Plaintiff argues that the Residual Functional Capacity Assessment found in the administrative opinion did not account for her full degree of impairment. *Plaintiff's Brief,* 6-16, *Docket #8.* She contends that her testimony of limitation is supported by the findings of consultative examiner Dr. Belen and the treating records. *Id.* at 10-12. Plaintiff argues that because her testimony was well supported, her claims of limitation ought to have included in

the RFC.[2] *Id.* at 10-12. She disputes that the conclusion that she was capable of performing her past relevant work at the light exertional level. *Id.*

The question of whether the ALJ erred by omitting Plaintiff's professed limitations from the RFC depends on whether the credibility determination was supported by substantial evidence. Pursuant to SSR 96-7p, the credibility determination describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186, *2 (July 2, 1996). The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.*

The ALJ did not err in discounting the testimony offered by Plaintiff and Michael Carrion. While Plaintiff testified that she stopped working in May, 2006 due to chronic back pain and chronic fatigue (Tr. 42), her statement is wholly unsupported by the treating records

---

[2]

For reasons unknown to the undersigned, Plaintiff's brief also includes a recitation of Sixth Circuit case law and the regulations pertaining to the deference accorded the opinion of a treating medical source. *Plaintiff's Brief* at 13-15. She is correct that the failure to provide a reasoned explanation for rejecting a treating physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544-546 (6th Cir.2004)(citing § 404.1527(c)(2)). However, none of Plaintiff's treating sources found that she was disabled or imposed functional limitations.

-10-

showing that her only treatment during that period was limited to the termination of an ectopic pregnancy (Tr. 192-193, 197).   The diagnosis of fibromyalgia is first mentioned in the September, 2009 treating records (Tr. 204).   The same treating notes state that Plaintiff was a "homemaker," suggesting that she refrained from working to take care of her children, rather than as a result of disability.

Plaintiff cites records showing that she was treated for flank pain in February, 2009. *Plaintiff's Brief* at 11 (Tr. citing 184-185).   However, the absence of subsequent records for "flank pain" suggests that her symptoms of that condition resolved after receiving emergency treatment.   While she argues that an April, 2011 MRI of the lumbar spine supports her disability claim, the imaging study showed only mild abnormalities.   *Id.* (citing Tr. 209).

Plaintiff also cites Dr. Belen's May, 2011 consultative finding that she was unable to sit, bend, stoop, carry, push, or pull.   *Plaintiff's Brief* at 11 (citing Tr. 235-239).   However, the ALJ explained her reasons for rejecting the consultative source opinion, noting that Dr. Belen's opinion was "drastically inconsistent with the evidence in the record which shows [Plaintiff's] providers have not imposed such restrictions in her activities" (Tr. 28-29).   The ALJ's conclusion that Dr. Belen's findings were based primarily on Plaintiff's allegations rather than clinical studies is well supported by his actual observations of normal ranges of motion in all joints except the lumbar spine and left ankle (Tr. 237-238).   For example, his finding that Plaintiff walked with a lurching gait and was unable to sit stands at odds with his observation that she did not require a walking aid and was able to get on and off the

-11-

examination table without difficulty (Tr. 235).  By itself, his observation that Plaintiff could get "on and off" the examination table (implying that she "sat" between the time she got "on and off") cannot be reconciled with Dr. Belen's finding that she was unable to sit.  Plaintiff's admitted ability to drive also contradicts Dr. Belen's conclusion that she was unable to sit. Dr. Belen's finding that Plaintiff was unable to bend is undermined by her testimony that she did yoga for exercise.   Accordingly, the ALJ did not err in rejecting Dr. Belen's findings or omitting them from the RFC.

As discussed by the ALJ, Plaintiff's account of her own activities support the non-disability finding.  Plaintiff testified that she exercised by walking or doing yoga (Tr. 26-27, 44).  She stated that she could drive for up to 30 minutes at a time (Tr. 27, 45).  Her testimony that she received medical treatment at least once every two weeks is contradicted by the treating records showing that she sought treatment at much less frequent intervals (Tr. 27, 46).

On a related note, Plaintiff argues that the ALJ erred further in failing to take Vocational Expert testimony before determining that she could perform her past relevant work as a receptionist and cashier. *Plaintiff's Brief* at 12.  This argument is not well taken.  An ALJ is "not required to solicit testimony for a VE in reaching his [Step Four] conclusion" that a particular claimant can return to her past relevant work. *Wright–Hines v. Commissioner of Social Sec.,* 597 F.3d 392, 395 (6th Cir.2010); See also 20 C.F.R. § 404.1560(b)(2)("We *may* use the services of vocational experts ... to help us determine whether you can do your past relevant work")(emphasis added).

-12-

Likewise, I find no merit in Plaintiff's assertion that the Step Four finding was not well supported. *Plaintiff's Brief* at 12. First, the ALJ stated that her finding that Plaintiff could perform exertionally light work was based on 20 C.F.R. § 404.1527, which defines light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" (Tr. 26). As discussed above, the ALJ supported the RFC by noting that Plaintiff's acknowledged ability to walk, exercise, drive, and take care of her children showed that she could perform exertionally light work (Tr. 26-27). Second, Plaintiff presents no evidence to suggest that her former jobs of receptionist or cashier exceeded the limitations set forth in the RFC, *i.e.*, that either position required her to lift more than 20 pounds or bend, climb, balance, stoop, kneel crouch, or crawl on more than an occasional basis (Tr. 26). Because she has not offered a plausible challenge to the Step Four finding, remand on this basis is not warranted.

Because the ALJ's determination that Plaintiff was capable of performing her past relevant work was comfortably within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 29, 2014


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 29, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen